IRA GREGORY *vs.* THE CITY OF BRIDGEPORT.

A municipal corporation may legally indemnify an officer, acting in good faith, for a loss incurred in the discharge of his official duty, but the duty must have been one authorized or imposed by law, and the matter one in which the corporation had an interest.

The common council of the city of Bridgeport, under authority of the city charter, enacted a by-law with regard to wharves and the anchoring, moving and mooring of vessels in the harbor, and appointed an officer called a superintendent of wharves to discharge the duties provided for in the by-law. The performance of his duties was not enforced by a penalty, and he acted only upon application of parties interested and at their expense. In the discharge of his duty and while acting in good faith, he ordered a vessel lying at a wharf to be hauled astern to make more room for another at an adjoining wharf, and was sued by the owner of the wharf for damages. Held that the city could not legally indemnify him for the expenses incurred by him in defending against the suit.

And it seems, where the charter gave the common council power to "ordain by-laws relating to wharves and the anchoring, moving and mooring of vessels," and "to appoint all necessary officers to carry the by-laws into effect," and the council passed a by-law creating the office of superintendent of wharves, and giving the officer "full power to order and regulate, whenever requested by the owner or lessee of any wharf, the mooring of vessels at such wharf,"

that the by-law was not void as delegating to the superintendent of wharves the making of regulations which the charter gave the common council alone the power to make.

PETITION for an injunction against a payment by the defendants; brought to the Superior Court in Fairfield County.

The petition alleged that the petitioner was an inhabitant of the city of Bridgeport, a taxpayer thereof, and an owner of real and personal estate liable to taxation and actually taxed therein; that on the 29th day of September, 1866, he brought his action on the case against John Brooks, of said city, to the City Court of said city, to recover damages sustained by him from the wrongful and malicious conduct of said Brooks, as set forth in his declaration in said action; that said cause was tried before said court and a jury, and upon the trial the jury rendered their verdict that the petitioner recover of said Brooks the sum of ten dollars damages, which verdict was accepted by the court, and thereupon judgment was duly rendered against said Boooks, in his favor for the sum of ten dollars damages, and his cost taxed at $26.15, which judgment remained in full force; that said Brooks afterwards filed his motion in error from said judgment to the Superior Court, which motion was allowed, and said cause was entered on the docket, and was now pending in said Superior Court; that said Brooks employed as his counsel in said cause and upon said trial, Beardsley and Sumner, attorneys at law in said city; that said attorneys on the 4th day of March, 1867, made out and presented to said Brooks their bill for their services in said cause to that time, and amounting to the sum of $104.09; that said Brooks on said day was and still remained an alderman and a member of the common council of said city, and as such on said day presented said bill to said council and requested payment of the same, and thereupon, on motion of said Brooks, said bill was by said council passed and ordered to be paid; that said action was personal between the parties thereto, and it was the sole duty of said Brooks to defend the same and pay all the expenses incurred in such defence, and all the damage recovered

therein; that said Brooks employed said attorneys in his own behalf and their services were rendered under his direction and for his sole and exclusive benefit; that said city had no interest in the subject matter of said action, and was in no wise liable for any of the causes of action therein, never employed said attorneys, and had no legal power or right to employ them or to defend in said action; that he was informed and believed, and therefore averred, that George F. Tracy, clerk of said city, intended to draw, and unless restrained would draw, his order upon Hervey Higby, treasurer of said city, in favor of said Brooks for the amount of said bill, and that said treasurer intended to pay and unless restrained would pay said sum to said Brooks upon said order, out of the funds of said city in his hands, or to be collected of the taxpayers of said city; that he was also informed and believed that the common council intended to assume the further prosecution of said motion in error and of the defense of the suit; praying for an injunction against said officers and against the city, forbidding such payment, and any further payments in the defense of the suit.

The respondents filed an answer alleging that, pursuant to the authority conferred upon the respondents by their charter, a by-law was enacted in due form by the city of Bridgeport, approved in a city meeting December 15th, 1863, a copy of which was appended; that pursuant to the provisions of the charter and by-law, said Brooks, named in said petition, was afterwards, and before the acts complained of, duly appointed superintendent of wharves, and held such office at the time of the alleged acts; that as such superintendent, the said Brooks was empowered, and it became his duty, to order that a certain vessel lying at the wharf of the petitioner in the city of Bridgeport, and within the limits of the district assigned to said Brooks as such superintendent by the common council, should be hauled astern far enough to permit a certain other vessel to obtain a berth at the adjoining dock, and that the suit referred to in the petition was brought by the petitioner to recover damages claimed by him therefor; that the said Brooks, as such superintendent and as the agent of the

city by virtue of said appointment, had full power and authority to make said order, and the same was made by him honestly, in good faith and without malice, and was a just and reasonable order.

Upon these pleadings the court made the following finding of facts :—

The court finds the facts to be as alleged in the petition, in relation to the petitioner being a taxpayer of the city, in relation to his bringing his action against Capt. Brooks and the proceedings had thereon, in relation to the employment of Messrs. Beardsley and Sumner and the vote of the common council to pay their bill, and in relation to the contemplated payment by the city of the expense of the further prosecution of the defense to the suit.

The parties were at issue, whether Capt. Brooks was acting as the servant of the city; and within the scope of his powers as superintendent of wharves, in doing the acts for which the action was brought, and whether the city council had power to pass the vote complained of. The petitioner also claimed that Capt. Brooks acted in bad faith and maliciously, and the respondents claimed the contrary.

It was conceded that Capt. Brooks was appointed by the city superintendent of wharves, and that he held the appointment at the time of the acts complained of, and that the brig was lying within the limits of his jurisdiction as such superintendent.

The acts done by Brooks for which the petitioner's action was brought, appear at large in a report of the plaintiff's evidence as detailed in 37 Conn. R., 365, to which it was agreed reference might be had.

In addition to the evidence there reported, the respondents now examined Capt. Brooks as a witness, upon whose testimony the court finds that he acted in the premises at the request of Miller & Co., and that he believed the brig could be safely hauled astern according to his order, and that she could safely discharge her cargo at the railroad dock; at which, if hauled astern according to the effect of the order, the cargo would have been discharged; and that the acts

complained of were done in the discharge of what he believed to be his duty, unless bad faith may be inferred from the facts themselves as proved.

The ninth section of the city charter provides as follows:— " Said common council shall have power, by a major vote of those present, to make and ordain by-laws or ordinances relating to wharves, and the anchoring, moving and mooring of vessels within said city."

The 32d section of the charter is as follows :—" The common council of said city shall have power and authority to constitute and appoint all necessary and proper officers, under such names and appellations as they may deem appropriate, and may invest them with the power and authority necessary and proper, not inconsistent with the laws of this state and of the United States, to carry into effect all the by-laws, ordinances and lawful orders of the common council."

The following by-law was passed by the common council and approved by the freemen of the city in a city meeting:—

" SEC. 1. That the common council of said city shall, from time to time, appoint one or more persons superintendents of wharves and docks, who shall hold their office during the pleasure of the common council, each of which superintendents shall have power to act only within the limits of the district assigned to him by the common council.

" SEC. 2. The superintendent of each district shall have full power to order and regulate, whenever thereto requested by the owner or lessee of any wharf within his district in said city, the laying or mooring of any and all vessels at such wharf, and when and how any and all vessels shall haul off from such wharf, to allow other vessels to pass or wind, or to receive or discharge their cargoes. The superintendent of each district shall also have full power, whenever in his judgment injury may be occasioned to any wharf within his district by reason of any impending storm, to order and cause any vessel lying at such wharf to haul off and anchor at such reasonable distance therefrom as he may direct.

" SEC. 3. The superintendent of each district shall have full power, whenever called upon by the owner or lessee of any

wharf within his district in said city, or by the owner or master of any vessel wishing to discharge her cargo at any such wharf, to settle and determine in what manner and at what part of such wharf the whole or any part of the cargo shall be discharged.

"SEC. 4. Said superintendent shall be entitled to receive from the person or persons at whose request he may act, the sum of thirty cents per hour for the time he shall be actually employed.

"SEC. 5. The masters and owners of every such vessel who shall fail or refuse to comply with any of the orders, directions and regulations that may be made by the superintendent of each district as provided by this law, shall severally forfeit and pay for the use of said city for each and every such failure or refusal, a fine not less than twenty-five nor more than thirty dollars."

Upon these facts the case was reserved by the Superior Court for the advice of this court.

*Treat* and *Blake*, for the petitioner.

1. To support a vote of indemnity by a city the following requisites are indispensable, viz:—1. The party indemnified must have been in fact and in law an officer or agent of the city, invested with some legal authority with relation to the act for which he is sued. 2. The act must have been one performed in behalf of the city, as a municipal corporation, or the suit one in which the city in its corporate capacity had an interest. Dillon on Municp. Corp., § 98 ; *Halstead* v. *Mayor &c. of N. York*, 5 Barb., 218, 222 ; *S. C.*, 3 Comst., 430. So strictly is the rule held in this state, that in the well-known case of *Brainerd* v. *City of New London*, 22 Conn., 556, it was held that the city could not vote money for an appropriate and laudable public purpose which was not a municipal object. And in *Jewett* v. *City of New Haven*, 38 Conn., 368, the same distinction is drawn between public and municipal purposes with respect to the city's liability for damages ; also in the later case of *Mead* v. *City of New Haven*, 40 Conn., 72. The cases in which the municipality was held to be authorized

to indemnify its official agents, will all be found to come within this rule. *Nelson* v. *Milford*, 7 Pick., 18; *Bancroft* v. *Lynnfield*, 18 id., 566; *Babbitt* v. *Savoy*, 3 Cush., 530; *Vincent* v. *Nantucket*, 12 id., 105; *Hadsell* v. *Hancock*, 3 Gray, 526; *Fuller* v. *Groton*, 11 id., 340; *Pike* v. *Middleton*, 12 N. Hamp., 278; *Merrill* ᵥ. *Plainfield*, 45 id., 126; *Sherman* v. *Carr*, 8 R. Isl., 431.

2. Capt. Brooks was not invested with any legal authority whatever with respect to the act for which he was sued. It was not a case of exceeding his powers, but one of acting entirely without power. The charter of the city (sec. 9) authorizes the common council " to make and ordain by-laws or ordinances relating to wharves and the anchoring, moving and mooring of vessels within said city." And this is the only authority that they have with relation to the subject, except such as is implied in section 32, where they are empowered " to constitute and appoint necessary and proper officers, &c., and invest them with the authority necessary and proper, not inconsistent with the laws of this state and of the United States, to carry into effect all the by-laws, ordinances and lawful orders of the common council." Now what authority does section 9 confer upon the common council? Simply to be the sole legislators of all necessary regulations concerning the use of wharves by vessels. They are not empowered to appoint officers to make such regulations, but are required to make such regulations themselves in the form of " by-laws" or " ordinances," and are then authorized (sec. 32) to appoint all proper officers " to carry such by-laws into effect." " By-laws" and " ordinances" are equivalent terms, and mean solemn public acts of a general application, made by the legislative authority. Dillon on Municp. Corp., §§ 244, 246. A by-law as to a particular individual is void. Id., § 256, note 2. These powers of legislation cannot be delegated. Id., §§ 60, 618 and note 2; *Barto* v. *Himrod*, 8 N. York, 483. Subsequent acts of affirmance cannot validate an invalid ordinance. *Hydes* v. *Joyes*, 4 Bush, 464. Now what have the common council by virtue of this authority done? Have they passed a public " by-law " or " ordinance" relating to the

moving and mooring of vessels at wharves, by which all navigators and wharf-owners might know their rights and duties in the premises? Not at all. They have delegated that legislative power to Capt. John Brooks, giving him power to make, at his sovereign will and pleasure, such orders and regulations as he shall see fit, and to enforce on the instant whatever "orders" he may at that instant choose to promulgate, with a penalty of "thirty dollars per hour" for questioning his authority in the premises. We say that this can in no sense be construed as a "by-law relating to wharves," &c. It is only by a very loose construction of the charter that such a sense can be claimed, and corporations are held to a strict construction of these instruments. In case of doubt the construction is against the power. Dillon on Municp. Corp., § 55.

3. The suit which the city proposes to adopt is not one in which it has any interest. The issue in it was strictly held to the question of personal malice on the part of Capt. Brooks —a question the decision of which could in no way affect the interests of the city; and even had the question of malice not been involved, still the suit in its very nature was one of private controversy only. The case is the precise counterpart in this respect of *Vincent* v. *Nantucket*, and *Merrill* v. *Plainfield*, before cited.

*M. W. Seymour* and *DeForest*, for the respondents.

1. It is one of the powers inherent in every municipal corporation to indemnify its officers and agents against liability which they may incur in the *bonâ fide* discharge of their duties, even though the result may show that they exceed their authority. Dillon on Municp. Corp., § 98; *Baker* v. *Windham*, 13 Maine, 74; *Pike* v. *Middleton*, 12 N. Hamp., 278; *Briggs* v. *Whipple*, 6 Verm., 95; *Nelson* v. *Milford*, 7 Pick., 18; *Bancroft* v. *Lynnfield*, 18 id., 566; *Babbitt* v. *Savoy*, 3 Cush., 530; *Hadsell* v. *Hancock*, 3 Gray, 526; *Fuller* v. *Groton*, 11 id., 340; *Sherman* v. *Carr*, 8 R. Isl., 431. This rule of law is decisive of the present case.

2. Capt. Brooks was an officer or agent of the city of

Bridgeport within the meaning of the rule. He was regularly elected by the common council in strict compliance with the provisions of the charter. Even if his election had been informal and technically defective, so that he could not strictly be called an officer of the city, yet he was an agent of the city, performing, at the request of the common council, duties which it was competent for them to entrust to him. So long as the very acts performed by him were not beyond the authority conferred by law upon the common council, the council having directed the acts to be done by him, or even having ratified and approved them, have made him their agent in the transactions, and have power to indemnify him.

3. He was, as a municipal officer, acting for the interest of the city in a matter in which the city had a private and peculiar concern, and was not performing any public or governmental functions. *Jewett* v. *City of New Haven*, 38 Conn., 368; *Jones* v. *City of New Haven*, 34 id., 1. But even if he be regarded as a public or governmental officer, still the city has power to indemnify. *Bancroft* v. *Lynnfield*, 18 Pick., 566; *Fuller* v. *Groton*, 11 Gray, 340; *Babbitt* v. *Savoy*, 3 Cush., 530.

4. He did not exceed his authority. See charter and ordinance. But if it be admitted that he did exceed his authority, yet he certainly acted in good faith, as appears from the finding, and this is enough. In all the cited cases except three the officers exceeded their authority.

PHELPS, J. The record in this cause presents for decision the question whether the respondent is legally authorized to make an appropriation from its treasury to indemnify an officer appointed under a by-law enacted by its common council, and approved by itself, in pursuance of authority conferred by its charter.

The officer or agent of a municipal corporation may be legally indemnified, provided he has acted in good faith in the discharge of his official duty in a matter in which the corporation had an interest and with respect to a duty imposed or authorized by law. The general powers of such cor-

porations are clearly prescribed, and those which are incidental, and implied in aid of those expressed, are generally not difficult of designation. The authority to appropriate money for objects within the scope of the powers either conferred or implied, is indispensable to the proper and efficient exercise of municipal functions, but it is an authority especially unsafe and liable to abuse, unless regulated by the application of sound legal principles, the interpretation of which is neither doubtful or discretionary.

The charter of the respondent gives its common council power to ordain by-laws relating to wharves, and the anchoring, moving and mooring of vessels within its limits, and the care and management of all wharves and landing places, and authority to make and cause to be executed all proper orders in relation to the protection, use and improvement thereof, and to appoint all necessary and proper officers, and invest them with power and authority necessary and proper to carry into effect the by-laws, ordinances, and proper orders of its common council. Under the authority thus conferred the by-law in question, and the appointment under it of Capt. Brooks as superintendent of wharves, were made. We are satisfied he was legally appointed, and that the by-law was regularly passed, and possessed all the validity of a lawful ordinance; and if the fact was decisive of the issue, we should have no difficulty in deciding that he believed himself at the time to be acting in the proper discharge of his official duty, and was not guilty of the bad faith and malicious conduct towards the petitioner which were imputed to him.

These considerations, though important in themselves, and if found in favor of the petitioner controlling, are not so deeply imbedded in the real merits of the case, as the question whether the respondent had such an interest in the subject matter of the controversy between the petitioner and Brooks as to entitle it to indemnify the latter for the expenses incurred by him in defending in the litigation which attended that controversy. This question lies at the foundation of the case, and is vital as affecting the right of such corporations as the respondent to make pecuniary appropria-

tions for purposes not expressly, or by clear implication, within the grant of power on which all their corporate authority depends. The artificial legal body known as a municipal corporation is a creature of limited powers. It possesses only such as are specifically granted by the law which confers upon it the right to exist, and such others as are necessary for the purpose of carrying into effect those expressly given. These powers are derived from the general statutes, and from special acts of incorporation, and should not be unnecessarily extended by construction. The act sought to be done should be fairly within the scope of the corporate power, and the principle of implication from which authority not expressly given is claimed to be derived, should be always carefully guarded in the interest and for the protection of the citizen, whose property in the form of taxation is largely subject to the demands and under the control of the municipality.

The by-law referred to is not compulsory in its terms, and does not assume to compel the officer appointed in pursuance of it to exercise official functions on peril of a forfeiture for refusal. His prescribed duty is simply to hear applications and complaints, and issue orders for the adjustment of differences between those who make conflicting claims connected with the prosecution of their private business. If he consents to act it is at the request of the owners and masters of vessels and the owners and lessees of wharf property, and not at the request of the respondent, or of any of its officers or agents. His compensation, though determined by the by-law, is to be paid by the persons at whose request he acts. They may be non-residents and even aliens owing allegiance to a foreign government, and temporarily within the territorial limits of the corporation for purposes of commercial intercourse. He is not the agent or servant of the respondent, nor subject to its control, and it is not responsible for his official negligence, misconduct, or delinquency, nor benefited by his efficiency and fidelity. With respect to his official character and obligations, the respondent has " no duty to perform, no rights to defend, and no interest to protect," and no pecuniary or corporate concern in the subject matter connected with the dis-

charge of his official duties. The want of interest involves the want of power, and is necessarily fatal to the claims of the respondent. *Merrill* v. *Plainfield*, 45 N. Hamp.,126; *Gove* v. *Epping*, 41 id., 539; *Halstead* v. *Mayor &c.*, *of N. York*, 3 Comstock, 430; *Martin* v. *Mayor &c.*, *of Brooklyn*, 1 Hill, 545; *Hodges* v. *City of Buffalo*, 2 Denio, 110; *Vincent* v. *Nantucket*, 12 Cush., 105; *Stetson* v. *Kempton*, 13 Mass., 272; *Nelson* v. *Milford*, 7 Pick., 18; *Fuller* v. *Groton*, 11 Gray, 340; *Babbitt* v. *Savoy*, 3 Cush., 530; *Bancroft* v. *Lynnfield*, 18 Pick., 566; *Tash* v. *Adams*, 10 Cush., 252; *Claflin* v. *Hopkinton*, 4 Gray, 502; *Hood* v. *Mayor &c.*, *of Lynn*, 1 Allen, 103; *Briggs* v. *Whipple*, 6 Verm., 94; *Baker* v. *Windham*, 13 Maine, 74; *Fiske* v. *Hazard*, 7 R. Isl., 438; *Sherman* v. *Carr*, 8 id., 43; *Brainard* v. *City of New London*, 22 Conn., 552; *Webster* v. *Town of Harwinton*, 32 id., 131; Dillon on Municipal Corporations, sec. 98.

The attempt at indemnity in this case is only made by the common council, with no authority or approval of the corporation; but if it had been in fact expressly authorized and approved by the citizens, in a meeting called and held with the requisite formality, the rights of the minority of tax-payers, however small, would be entitled to protection through the form of remedy which the petitioner has invoked.

We advise the Superior Court to decree that the injunction be made perpetual.

In this opinion the other judges concurred.