ALEXANDER MAITLAND ET ALS. *v.* TOWN OF THOMPSON ET ALS.

MALTBIE, C. J., AVERY, BROWN and JENNINGS, Js.[1]

[1] By agreement of counsel the case was argued before and decided by four judges.

Argued May 8—decided June 10, 1942.

*John B. Harvey,* for the appellants (plaintiffs).

*Jeremiah D. Shea* and *William P. Barber,* with whom were *Ellsworth B. Foote* and, on the brief, *David E. FitzGerald,* for the appellees (defendants).

JENNINGS, J. The plaintiffs are taxpayers of the town of Thompson, hereinafter referred to as the town. The defendants are the town, its selectmen and treasurer. The plaintiffs secured a temporary injunction restraining the defendants from paying a bill for legal services rendered to five members of the board of education based on the defense of a libel action, brought against them by the former superintendent of schools of the town, on the ground that the payment would be an illegal diversion of public funds raised by taxation. In this action they sought, unsuccessfully, to have this injunction made permanent. The basic question is, can the town legally assume the expense of this defense?

The finding, which is not attacked by the plaintiffs, discloses the following facts: The town's board of education consists of nine members. They serve without pay. In April, 1938, the board voted, five to four,

not to rehire Melden E. Smith, who had been super-intendent of schools for one year. The minority requested the majority to give reasons for their action but the latter gave no reason at that time. Almost immediately great agitation arose in the town and demands were made that the reasons for this action be made public. The majority of the board endeavored to avoid harming Smith but were advised by the state commissioner of education to make their reasons public and finally, acting reluctantly and under public pressure amounting almost to compulsion, on advice of counsel wrote a letter to the state commissioner. This gave as their reasons that Smith had attempted to put through unwarranted and unauthorized purchases of supplies, that he had carried to the board untruthful stories about teachers and that he had misrepresented his qualifications to act as superintendent of schools. The minority were partially responsible for the agitation described and, to avoid further unpleasantness, the majority did not call a special meeting to ratify their action in writing the letter until after the termination of the litigation which ensued. Thus the charges were never brought before or considered by the board, as such. Smith requested a retraction. He sued the majority, as individuals, for libel, describing them in the body of the complaint as members of the board of education and alleging that the acts complained of were acts performed by them as members of the board.

The defendants in the libel action consulted the town counsel and as a result it became necessary for them to seek counsel elsewhere. Counsel were retained and represented these defendants throughout the lengthy trial. The defense was privilege and the trial court in that action found for the defendants on the ground that there was a conditional privi-

lege and that the defendants were free from malice. No appeal was taken from that decision. In the case at bar, the court further found that these defendants acted in good faith and without malice in voting not to rehire Smith, that they honestly believed that the statements contained in the letter were true, that they made them in good faith and that all of these acts were performed in a conscientious desire to discharge the duties of their office as members of the board. After judgment bills for legal services were rendered to the town and the board in the amount of $2085.85. The board approved the bills, thereby ratifying, as a board, the action of the majority in hiring counsel, and requested that the selectmen call a special town meeting to appropriate money for their payment. This meeting was held upon due notice, the necessary appropriation was made and the selectmen and treasurer were empowered and directed to pay the bills.

The trial court further found concerning the libel action that "The judgment filed therein was that though the charges were unfortunately and mistakenly made and were not true," nevertheless, the five defendants being members of the board occupied a position of conditional privilege. The defendants attack the quoted portion as found without evidence; that this was so was not disputed by the plaintiffs in brief or oral argument. The quoted statement was not a special finding in the judgment of the libel action but was taken from the memorandum of decision. This alone would justify striking out the finding. Furthermore, although the file in the libel action, including the memorandum of decision, was made an exhibit in the case at bar, it was relevant only to show the issues raised by the pleadings and the resulting judgment. *German* v. *German*, 125 Conn. 84, 89, 3 Atl. (2d) 849. As to these issues, described above, this

unnecessary statement was not a basis upon which the finding objected to could be made. It is stricken from the finding.

One ruling on evidence is made a ground of error. Smith was not present at the trial of the case at bar and his whereabouts were unknown, but the plaintiffs offered in evidence his demand for a retraction which was refused by the defendants in the libel action. Its authenticity was admitted but it was objected to as irrelevant and excluded on that ground. Neither the wording of the demand for retraction as given in the finding nor the corrected finding as a whole support the claim of relevancy. The ruling was correct.

The conclusions reached by the trial court were, in effect, that the defendants in the libel action were acting in discharge of a duty imposed by law in a matter in which the town had an interest and that the board and town lawfully ratified their action in incurring the legal fees in question. The remaining assignments of error attack these conclusions and the overruling of the claims of law made in connection therewith.

*Keegan* v. *Thompson,* 103 Conn. 418, 130 Atl. 707, concerned the payment of compensation to a member of the town school committee. It was held that the town had no authority to do this, but in the course of the opinion (p. 425) the court intimated that necessary expenses should be paid by the town treasurer when approved by the school committee. The conditions justifying the indemnification of a public officer for a loss incurred in the discharge of his official duties were defined in the case of *Hotchkiss* v. *Plunkett,* 60 Conn. 230, 234, 22 Atl. 535, as follows: The officer must have been acting in a matter in which the corporation has an interest, he must have been acting in

the discharge of a duty imposed or authorized by law and he must have acted in good faith.

The finding establishes that the defendants in the libel action were acting as members of the board of education. A member of the board of education is a public officer. *Keegan* v. *Thompson,* supra, 420. The board of education has general charge of the public schools. General Statutes, Cum. Sup. 1935, § 296c. It is specifically charged with their supervision and the election of a superintendent. Id., § 243c. Numerous sections of the statutes impose duties on towns with respect to the public schools. See generally Chapters 44-54 of the General Statutes, as amended. These statutes, as well as our legislative history, show that the state has had a vital interest in the public schools from the earliest colonial times and has delegated important duties in connection therewith to the towns. *Newton* v. *Hamden,* 79 Conn. 237, 240, 64 Atl. 229. If the issue had concerned only the refusal of the board to rehire the superintendent of schools, there would not have been the slightest question about the interest of the town in the matter. The difficulty arises because the precise action which the defendants in the libel action were called upon to defend was the writing of the letter giving their reasons for this refusal.

Under ordinary circumstances it might be difficult to spell out the interest of the town in the writing of such a letter, especially if it had been written gratuitously in an apparent effort to injure the professional reputation of Smith. The circumstances here were not ordinary. The defendants in the libel action were found to have acted in good faith. The letter was written only after the majority of the board had consulted counsel and had been advised by the then head of the state's educational system to make their reasons

public. Compliance with the advice of such an important state official might well be called the performance of a duty imposed by law. Even so, the reasons were not made public but were contained in a letter to the commissioner. How the letter came to public notice does not appear, but there is no finding that the writers were responsible. Had they been, the situation with reference to the conditions of the *Hotchkiss* case would be the same. The responsibility of public officers is to their constituents and the latter are entitled to know the reasons for official acts in order to judge whether the officers in question continue to deserve public confidence and support. The interest of the town in the matter clearly appears. The fact that the act of sending the letter was not the official action of the board does not necessarily determine the issue in favor of the plaintiffs. *Newton* v. *Hamden*, supra, 241. See, for collections of the cases on this general subject, note, 103 A. L. R. 763; *Messmore* v. *Kracht*, 172 Mich. 120, 137 N. W. 549, 33 Ann. Cas. 658 and note, 660. On the finding as a whole, the subordinate facts support the conclusion of the trial court that the conditions laid down in the *Hotchkiss* case were met. It follows that, as the town had the right to pay the expenses, the trial court was correct in refusing to make permanent the injunction to restrain its officials from making the payment.

The cases relied on by the plaintiffs do not lead to a contrary conclusion. *Hotchkiss* v. *Plunkett*, supra, was decided upon a demurrer to the answer. The action was one brought by a taxpayer to restrain a school district from paying the legal expenses to which the members of its board of education had been put in defending a suit brought against them. The allegations of the complaint in that suit were that the defendants had conspired to injure the business reputa-

tion and standing of the plaintiffs and to hinder them in their business and prevent them from dealing with the district; and that, in pursuance of the conspiracy, the defendants had seized and secreted a bid which the plaintiffs had made to the district to furnish stationery for its schools, and had falsely stated to various persons that the plaintiffs carried on their business dishonestly and had cheated the school district. We held that the answer in no way controverted these allegations and was, therefore, insufficient, and we said (p. 237): "It seems to us to be too plain for anything but statement that the school district of the city of New Haven has no interest in injuring the business reputation and standing of a copartnership of its citizens; nor is there any duty authorized by law, or imposed upon any of its officers or agents, to engage in a combination for such purpose, or to make charges of dishonesty and cheating. Any attempt to use the money of the district to defend its agents from such acts would seem to be so palpable a misuse of it that the court would not hesitate to interfere by way of an injunction." The *Hotchkiss* case is clearly distinguishable on its facts. *Keegan* v. *Thompson,* supra, held only that there was no statutory authority to compensate a member of the school committee for his services. In *Gregory* v. *Bridgeport,* 41 Conn. 76, a superintendent of wharves was unable to collect expenses incurred by him in defending a suit based on his negligence on the basic ground that the town had (p. 86) " ' no duty to perform, no rights to defend, and no interest to protect' " with respect to his official obligations. This is not true here.

There is no error.

In this opinion the other judges concurred.